UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **LOCAL UNION NO. 33 TRUSTEES OF THE SHEET METAL WORKERS' AKRON DISTRICT PENSION FUND, et al.,** | ) ) ) ) | **CASE NO. 5:08CV2954** |
| | ) | **JUDGE SARA LIOI** |
| Plaintiffs, | ) ) ) | **MEMORANDUM OPINION AND ORDER** |
| v. | ) ) | |
| **MAP HEATING & COOLING, LLC, et al.,** | ) ) ) | |
| Defendants. | ) ) | |

   This matter is before the Court on the motion of Plaintiffs Trustees of the Sheet Metal Workers' Local Union No. 33, Akron District, Pension Fund, et al., for summary judgment pursuant to FED. R. CIV. P. 56. (Doc. No. 51.) As explained below, Defendants MAP Heating & Cooling, LLC, and Air Solutions Heating & Cooling, LLC, have not filed oppositions. For the reasons that follow, Plaintiffs' motion is **GRANTED**.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

   At the outset, the Court notes that Plaintiffs' motion is unopposed. In such a situation, "a court's reliance on the facts advanced by the movant is proper and sufficient." *Cacevic v. City of Hazel Park*, 226 F.3d 483, 491 (6th Cir. 2000); *see also Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 404 (6th Cir. 1992) (citing "[d]ozens of other panels" holding the same).

   This is an ERISA case. Plaintiffs are plans and trusts created and maintained pursuant to collective bargaining agreements (collectively, "the CBAs") between the Sheet Metal Workers' Local Union No. 33 International Association ("Local 33") and the

Akron/Canton/Mansfield Roofing and Sheet Metal Contractors" Association ("the Association"). Plaintiffs have standing under 29 U.S.C. § 1132(d)(1). Defendant MAP Heating & Cooling ("MAP"), fka MAP Mechanical, LLC, is an LLC with its principal place of business in Uniontown, Ohio. (Michael Pitzo Dep., Doc. No. 51-12 at p. 15 (hereinafter "Pitzo Dep."[1]).) MAP has not had business since June 2009 and is not engaged in seeking new business. (*Id.* at p. 17.) Defendants Mary and Michael Pitzo are residents of Canton, Ohio, and principals of MAP. (*Id.* at p. 7.) Defendant Air Solutions Heating & Cooling ("Air Solutions") is a heating and cooling business with its principal place of business in Jackson Township, Ohio. (*Id.* at p. 49.) Air Solutions was opened in January 2009 by Defendants Mary and Michael Pitzo, but was soon transferred to the Pitzo's children on the advice of a bank due to Mary and Michael Pitzo's credit problems. (*Id.* at p. 50-52.) Air Solutions rents its building from Wales Management, a company owned by Defendant Michael Pitzo, and uses the business license of Defendant Michael Pitzo. (Peckinpaugh Dep., Doc. No. 51-16 at pp. 15-16 (hereinafter "Peckinpaugh Dep.").)

MAP entered into a CBA with Local 33, effective October 4, 2005. (Heather Lawrence[2] Affidavit, Doc No. 51-1 at ¶ 5 (hereinafter "Lawrence Aff.").) Relevant here, the terms of the CBA state:

> The Participating Employers shall contribute to each and every employee benefit plans (or to the successor of any of said plans) for all employees of each such Participating Employer who are members of the Collective Bargaining Unit represented by the Union (whether or not the employees are members of the Union) as follows: [. . .].

(Doc. No. 51-2 at p. 22.) Additionally, MAP is required under the CBA to report the number of "hours worked by each bargaining unit employee and submit all fringe benefit amounts due and owing on or before the 20th day of the following month." (Lawrence Aff. at ¶ 8; Doc. No. 51-2 at

---

[1] As discussed later in this opinion, Defendant Mary Pitzo was never deposed in this case.
[2] Heather Lawrence is the administrative manager of the Plaintiff Funds.

p. 24.) Moreover, the CBA specifies that, in the event MAP failed to remit the fringe benefits due, that MAP would be liable for the amount due, liquidated damages, interest, the costs of an audit, and attorney's fees. (Lawrence Aff. at ¶ 8; Doc. No. 51-2 at p. 24-26.)

At some point in 2008, MAP became "behind on fringe benefits." (Pitzo Dep. at p. 45.) On May 18, 2008, Mary Pitzo sent a letter to Local 33 officials acknowledging a deficit, stating an intention to pay the monies owed, and imploring them to not pull the union workers from MAP projects. (Doc. No. 51-5 at p. 1 ("Map Heating & Cooling has NO intentions of NOT paying the dues that we owe Union Local #33.").) In spite of the letter, Local 33 pulled its members from MAP jobs in May 2008. (Pitzo Dep. at p. 45.) After Local 33 pulled its members, MAP began using labor from Tradesmen International, a non-union labor pooling source, and continued to use Tradesmen workers until MAP ceased operations in June 2009. (Pitzo Dep. at pp. 39, 45.) Fringe benefit contributions were not paid on behalf of the Tradesmen workers. (*Id.* at p. 41.)

Plaintiffs filed a complaint against MAP and Defendants Michael and Mary Pitzo on December 22, 2008, alleging MAP failed to pay fringe benefit contributions due to Plaintiffs pursuant to the CBAs and alleging the Pitzos breached their fiduciary obligations under ERISA. (Doc. No. 1.) After discovering the existence of Air Solutions, Plaintiffs filed an amended complaint on July 10, 2009, with the Court's permission. (Doc. No. 15.) In the amended complaint, Plaintiffs reasserted their allegations against MAP and the Pitzos, and included a claim against Air Solutions under an alter ego liability theory. Defendants answered the amended complaint on July 20, 2009. (Doc. No. 17.) Defendants were dilatory in their responses to Plaintiffs' discovery requests, and Plaintiffs filed a motion to compel discovery on October 27, 2009. (Doc. No. 31.) This Court subsequently referred the motion for resolution to Magistrate

Judge Benita Pearson, who issued a written opinion granting Plaintiffs' motion on November 16, 2009. (Doc. No. 42.) Specifically, Magistrate Judge Pearson was "not persuaded that MAP has no possession of or access to routine business records such as those requested and not produced" and that "MAP's responses are noncompliant because they are evasive and incomplete." (*Id.* at p. 6.) Moreover, the Magistrate Judge found Air Solutions' Rule 30(b)(6) representative, Philip Peckinpaugh's, testimony to be inadequate.[3] (*Id.* at p. 10.) Finally, the Magistrate Judge ordered Defendants to produce Mary Pitzo, who had sought to avoid her deposition on vague medical grounds, for a deposition. (*Id.* at 11.)

Defendants never complied with the Magistrate Judge's order and subsequently failed to appear at a previously scheduled mediation conference. On November 27, 2009, Defendants Michael and Mary Pitzo filed a petition for Chapter 7 bankruptcy and this action as against them was automatically stayed pursuant to 11 U.S.C. § 362. (Doc. No. 46.) Counsel for all Defendants withdrew shortly thereafter, leaving corporate Defendants MAP and Air Solutions, against whom the lawsuit continued, unrepresented. (Doc. No. 45.) On December 11, 2009, this Court ordered MAP and Air Solutions to obtain new counsel, as "a corporation cannot appear in federal court except through an attorney" in the Sixth Circuit. *See Doherty v. A.M.C.*, 728 F.2d 334, 340 (6th Cir. 1984). Neither MAP nor Air Solutions obtained new counsel, and neither has participated in this case since that date.

On March 2, 2010, Plaintiffs filed a motion for summary judgment. (Doc. No. 51.) In their motion, Plaintiffs request damages based on the fringe benefit contributions, liquidated damages, interest, costs, and attorney's fees. Against this backdrop, Plaintiffs' motion

---

[3] This Court notes that Peckinpaugh, although having the title of "operations manager" at Air Solutions, worked only ten hours per week for the company, was never paid by the company, and was unsure as to who owned the company. (Peckinpaugh Dep. at pp. 6-8.)

4

is ripe for decision.[4] The Court shall first turn to the liability of MAP, and then address Plaintiffs' contention that Air Solutions is liable as MAP's alter ego.

## II.   LAW AND ANALYSIS

### A.   Summary Judgment Standard

The standard governing summary judgment is set forth in Federal Rule of Civil Procedure 56(c), which provides:

> The judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

FED. R. CIV. P. 56(c). The Court may grant summary judgment if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). *See also Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986); *Petty v. Metropolitan Government of Nashville-Davidson County*, 538 F.3d 431, 438-39 (6th Cir. 2008).

When reviewing a summary judgment motion, the Court must draw all reasonable inferences in favor of the nonmoving party, who must set forth specific facts showing that there is a genuine issue of material fact for trial, and the Court must refrain from making credibility determinations or weighing the evidence. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150-51 (2000); *Henderson v. Walled Lake Consol. Schools*, 469 F.3d. 479, 487 (6th Cir. 2006). The Court disregards all evidence favorable to the moving party that the jury would not be not required to believe. *Reeves*, 530 U.S. at 150-51. Summary judgment will not lie if the

---

[4] On April 13, 2010, the Court permitted Plaintiffs leave to supplement their motion for summary judgment with respect to the issue of attorneys' fees only, and established a briefing schedule in that regard. On April 22, 2010, Plaintiffs filed a supplement. (Doc. No. 52.) Defendants did not file a response.

dispute about a material fact is genuine; "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 511 (6th Cir. 2009).

Thus, the central issue is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234-35 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 251-52).

Notably, a district court may properly rely upon the facts provided by a moving party when a motion for summary judgment goes unopposed. *Guarino v. Brookfield Township Trs.*, 980 F.2d 399, 404-05 (6th Cir. 1992).

**B.     Fringe Benefit Contributions**

ERISA provides "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145. Congress enacted this statute, also known as ERISA section 515, in order to permit multiemployer plans to "rely upon the terms of collective bargaining agreements and plans as written, thus permitting trustees of plans to recover delinquent contributions efficaciously, and without regard to issues which might arise under labor-management relations law [. . .]." *Bakery & Confectionery Union & Indus. Int'l Health Benefits & Pension Funds v. New Bakery Co.*, 133 F.3d 955, 959 (6th Cir. 1998) (citing *Central Pennsylvania Teamsters Pension Fund v. McCormick Dray Line, Inc.*, 85 F.3d 1098, 1103 (3d Cir. 1996)). "Because, under section 515, multiemployer plans are entitled to rely on the literal terms of written commitments between the plan, the employer, and the

6

union, the actual intent of and understandings between the contracting parties are immaterial." *Id.*

In this case, MAP was a signatory to a multiemployer CBA and contractually obligated itself to make fringe benefit contributions to the Plaintiffs. Moreover, the relevant language explicitly provides that MAP must contribute fringe benefits on behalf of "*all employees*, [. . .] *whether or not* the employees are members of the Union." (Doc No. 51-5 at ¶ 5 (emphasis added).) "As a matter of law, collective bargaining agreements may require employers to contribute to funds for all employees, not just employees who are members of the union." *Bds. of Trs. of the Ohio Laborers' Fringe Benefit Programs v. Jenkins*, 283 Fed. Appx. 315, 318 (6th Cir. 2008). Further, Mike Pitzo's deposition and two pre-litigation letters sent by MAP to Plaintiffs evidence MAP's acknowledgement of the fringe benefit deficiency. It cannot, therefore, be disputed that MAP had a duty to pay fringe benefit contributions but failed to do so.

After litigation commenced, Plaintiffs engaged Marty Hrabik to conduct an audit of MAP's books and records from January 1, 2008 to the date of the audit. (Lawrence Aff. at ¶ 13.) MAP only provided records through May 31, 2008. (*Id.* at ¶ 14.) Hrabek's audit, limited by the failure of MAP to provide a complete set of records, concluded that MAP owed $44,702.82 in delinquent contributions. (*Id.* at ¶ 16.) During the course of discovery, Plaintiffs discovered additional timecards and paycheck stubs for persons employed by MAP after May 31, 2008, in addition to receipts for amounts paid for labor to Tradesmen International. (*Id.* at ¶ 16.) Based on these documents, Plaintiffs calculated the deficiency from May 31, 2008 to be $109,458.20, for a total deficiency of $154,162.02. (*Id.* at ¶¶19, 20.) MAP has offered no evidence to rebut Plaintiffs' calculations, which are supported by the record.

7

Therefore, the Court holds that MAP violated § 1145 by failing to make fringe benefit contributions to the Plaintiffs and finds the amount of the deficiency to be $154,162.02.

**C.     Liquidated Damages, Interest, Attorney's Fees, and Costs**

ERISA *requires* awards of liquidated damages, interest on unpaid contributions, attorneys' fees, and costs in actions brought to enforce 29 U.S.C. § 1145 for failure to make contribution payments. *See Michigan Carpenters Council Health and Welfare Fund v. C.J. Rogers, Inc*., 933 F.2d 376, 388 (6th Cir.) (stating that the remedies provided by 29 U.S.C. § 1132(g)(2), which include reasonable attorneys' fees, are mandatory). Specifically, 29 U.S.C. § 1132(g)(2) provides:

> In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan:
>
> > (A)  the unpaid contributions,
> > (B)  interest on the unpaid contributions;
> > (C)  an amount equal to the greater of
> > > (i) interest on the unpaid contributions, or
> > > (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under federal or state law) of the amount determined by the court under subparagraph (A),
> >
> > (D) reasonable attorneys' fees and costs of the action, to be paid by the defendant, and
> > (E) such other legal or equitable relief as the court deems appropriate.
>
> For purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26.

As stated above, judgment will be entered in favor of the Plaintiffs in this action to enforce § 1145 for failure to make contribution payments, and therefore must award damages in the categories listed above. The Court next must determine the proper amount of the award.

8

1.   **Liquidated Damages**

Section 1132 provides for liquidated damages "provided for under the plan in an amount not in excess of 20 percent [. . .]." 29 U.S.C. § 1132(g)(2). In this case, the CBA provides that "liquidated damages shall be considered ten percent (10%) of all monies owed [. . .]." (Doc. No. 51-2 at p. 24.) In this case, therefore, Plaintiffs are entitled to liquidated damages in the amount of $15,416.20, ten percent of the amount of the deficiency.

2.   **Interest**

Section 1132 also mandates interest on the unpaid contributions. In this case, the CBA provides for an interest rate of 12 percent per annum. (Doc. No. 51-2 at p. 24.) Plaintiffs are therefore entitled to an award of interest in the amount of $18,499.44.

3.   **Attorney's Fees and Costs**

Section 1132 also mandates an award of "reasonable attorneys' fees" in successful actions brought to recover unpaid contributions to a multiemployer plan under § 1145.[5] As Plaintiffs are statutorily entitled to attorneys' fees, the Court must next address the reasonableness of the requested fees. The Court must first find that the fee applicant has sufficiently documented his time and hourly rate. *See Wooldridge v. Marlene Indus. Corp.*, 898 F.2d 1169, 1176 (6th Cir. 1990); *United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass'n v. G&M Roofing & Sheet Metal Co.*, 732 F.2d 495, 502 n.2 (6th Cir. 1984). The documentation must be detailed enough for the Court to determine with a high degree of certainty that the time claimed was actually and reasonably spent in pursuit of the relief

---

[5] In its motion for summary judgment, Plaintiffs appear to argue that attorneys' fees are warranted in this case based upon § 1132(g)(1). Under that subsection, attorneys' fees are discretionary, and the Court is required to apply a five-factor test as set forth in *Secretary of Dep't of Labor v. King*, 775 F.2d 666, 669 (6th Cir. 1985), to determine on a case by case basis whether fees are appropriate. This case, however, involves unpaid contributions to a multiemployer plan under § 1145. In this situation, § 1132(g)(2), and not § 1132(g)(1), applies, and an award of attorneys' fees is mandatory, not discretionary.

9

sought. Hours are "reasonably expended where a reasonable attorney would have believed the work to be reasonably performed in pursuit of success at the time the work was performed." *Wooldridge*, 898 F.2d at 1177.

If the Court concludes that the billing records adequately document the representation provided, the Court then performs a "lodestar" calculation to determine a reasonable attorney's fee. *See Coulter v. Tennessee*, 805 F.2d 146, 148 (6th Cir. 1986). The "lodestar" amount is calculated by multiplying the attorney's reasonable hourly rate by the number of hours reasonably expended. *Id*. at 148 n.1. The court may then adjust the fee upward or downward, in light of the results obtained. *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). The fee applicant bears the burden of showing what number of hours and rate or rates of pay are "reasonable" in light of the facts and circumstances of each case. *See Americans United for Separation of Church and State v. School Dist. of Grand Rapids*, 717 F. Supp. 488, 491 (W.D. Mich. 1989).

As stated above, in this case, an award of fees is mandatory. Accompanying Plaintiffs' motion for summary judgment, Attorney Amy Zawacki submitted an affidavit stating the total amount of fees incurred by Plaintiffs and the rate charged by the attorneys in this case, but did not provide any information concerning whether the hours spent were "reasonably expended." Therefore, on April 13, 2010, the Court issued an Order allowing Plaintiffs to supplement their motion, with respect to the attorneys' fee issue only, and allowing Defendants an opportunity to respond. (Non-document Order, April 13, 2010.) On April 22, 2010, Plaintiffs supplemented their motion with a brief justifying the time claimed and detailed billing records showing the hours expended and tasks performed. (Doc. No. 52, 52-1.) Defendants did not file any response to Plaintiffs' supplement.

The Court has carefully reviewed Plaintiffs' supplement. The Court finds that the hourly rates requested by Plaintiff, which range between $155 and $160 for attorney work (reduced to $80 for travel time) and $75 for support staff work are reasonable. The Court further finds that the hours submitted by Plaintiffs' attorneys were reasonably expended. The Court notes that some of these hours were expended in the course of a discovery dispute, a dispute characterized by the Magistrate Judge as one in which "Defendants' noncompliance with Plaintiffs' apparently reasonable discovery requests have been unjustifiably persistent and egregious, causing needless and avoidable delays." (Doc. No. 42 at p. 12.) Therefore, the Court calculates the lodestar as follows:

1. Plaintiffs' attorneys reasonably expended 136.202 hours on this matter at the reasonable rates of $155-160 ($80 for travel time) as detailed in their billing statements, for a total of $20,530.24.

2. Plaintiffs' attorneys' support staff reasonably expended 15.646 hours on this case at a reasonable rate of $75.00 per hour, for a total of $1173.45

3. The total lodestar amount, therefore, is $21,703.09.

While the Court is permitted to make adjustments to the lodestar in appropriate circumstances, *see Dowling v. Litton Loan Servicing LP*, 320 Fed. Appx. 442, 447 (6th Cir. 2009), neither party has argued for such an adjustment and the Court declines to do so. Therefore the Court awards Plaintiffs $21,703.09 in attorneys' fees.

Plaintiffs also seek $1,900 in costs, representing the cost of Hrabik's audit. This request is well-taken. In the first instance, § 1132(g)(2) mandates an award of costs, and courts routinely hold that audit costs are recoverable under that section. *See Operating Engineers Pension Trust v. A-C Co.*, 859 F.2d 1336, 1343 (9th Cir. 1988) ("Because an award of audit costs to the prevailing party is consistent with the policy of encouraging full and fair contributions, we

hold that audit costs are recoverable under subsection (E)."); *Northwestern Ohio Adm'rs, Inc. v. PTX Flooring, Inc.*, No. 05-cv-7316, 2009 U.S. Dist. LEXIS 47473 (N.D. Ohio June 5, 2009) (holding employer liable for audit costs). Moreover, the CBA has an express provision governing payment of audit costs. Specifically, the CBA allows that

> The Trustees of the several employee benefit plans may establish Payroll Audit Programs, which shall be binding upon the parties. The Trustees shall also have the right to determine who shall bear the cost of the audit, provided, however, that if the audit fails to disclose any current or past deficiencies, the Fund shall pay the cost of the audit.

(Doc. No. 51-2 at pp. 24-25.) The Trustees developed a Payroll Audit Program pursuant to the CBA. Relevant here, paragraph eleven states:

> If as a result of the payroll examination and audit of an employer, it is determined to the reasonable satisfaction of the Trustees that the amount therefore contributed by the employer for the period of the audit was more than five percent (5%) or Seven Thousand ($7,000.00) Dollars, whichever is less, below the amount determined by the Auditor and accepted by the Trustees to be due and owing, then the full expense of the audit of said employer reasonably and actually incurred by the Trustees shall be borne by the employer.

(Doc. No. 51-9 at p. 3.) Here, of course, the amount of the deficiency as determined by Hrabik's audit exceeds the threshold established by the Payroll Audit Program, triggering the cost-shifting provision. Therefore, the Court awards Plaintiffs $1,900.00 in costs for the audit.

    4.    **Total Damages**

For the foregoing reasons, the Court holds that MAP is liable to Plaintiffs for failure to make fringe benefit contributions under the CBA as required by ERISA, for the following amounts:

| | |
|---|---|
| $154,162.02 | Fringe Benefit Contributions |
| $15,416.20 | Liquidated Damages |
| $18,499.44 | Interest |

12

|  |  |
|---|---|
| $21,703.09 | Attorneys' Fees |
| $1,900.00 | Costs |
| **$211,680.75** | **Total Liability** |

### D. Alter Ego Liability of Air Solutions

Plaintiffs assert that Air Solutions is the alter ego of MAP, and, as a result, liable for MAP's failure to make fringe benefit contributions as required by the CBA. The Court agrees.

"The alter ego doctrine is an equitable doctrine 'developed to prevent employers from evading obligations under the [NLRA] merely by changing or altering their corporate form.'" *Trs. of the Detroit Carpenters Fringe Benefit Funds v. Indus. Contr., LLC*, 581 F.3d 313, 318 (6th Cir. 2009) (citing *NLRB v. Allcoast Transfer, Inc.*, 780 F.2d 576, 579 (6th Cir. 1986). Under the alter ego doctrine, an employer is bound to a collective bargaining agreement if it is found to be an alter ego of a signatory employer. *Allcoast Transfer,* 780 F.2d at 582-83. The Sixth Circuit has recognized alter ego operations in two different factual contexts. First, "[t]he alter ego doctrine is most commonly used in labor cases to bind a new employer that continues the operations of an old employer in those cases where the new employer is 'merely a disguised continuance of the old employer.'" *NLRB v. Fullerton Transfer & Storage, Ltd.*, 910 F.2d 331, 336 (6th Cir. 1990) (quoting *Southport Petroleum, Co. v. NLRB*, 315 U.S. 100, 106 (1942)). The second is what is referred to as a "double-breasted operation," and is implicated when "two or more coexisting employers performing the same work are in fact one business, separated only in form." *Fullerton Transfer*, 910 F.2d at 336.

In *Industrial Contracting*, a 2009 case, the Sixth Circuit set forth the test for determining whether two companies are alter egos:

> We look to see "whether the two enterprises have substantially identical management, business, purpose, operation, equipment, customers, supervision

> and ownership." [*Fullerton Transfer*, 910 F.2d at 336] (quoting *Nelson Elec. v. NLRB*, 638 F.2d 965, 968 (6th Cir. 1981)). In applying these factors, no individual factor is outcome determinative; instead, "all the relevant factors must be considered together." *Allcoast Transfer*, 780 F.2d at 582. Under Sixth Circuit precedents, moreover, an employer's intent to evade the obligations of a collective bargaining contract is merely one of the factors to be considered and is not a prerequisite to the imposition of alter-ego status. *Fullerton Transfer*, 910 F.2d at 337.

*Indus. Contr.*, 581 F.3d at 318.

In this case, the Sheet Metal Workers' Local Union No. 33 pulled its workers from MAP projects in May 2008 due to MAP's failure to make the required fringe benefit contributions. (Pitzo Dep. at p. 46.) Mike Pitzo did not draw any salary from MAP as of August 5, 2008. (*Id.* at p. 54.) In January 2009, the Pitzos started a second business, Air Solutions. (*Id.* at p. 49.) Air Solutions was located ten miles away from MAP, and also performed heating and cooling work. (*Id.*) Sometime after the Pitzos opened Air Solutions, the Pitzos transferred the business to their children. (*Id.* at p. 48 ("Our equity is so bad that were recommended by a bank that if [Air Solutions] is going to succeed, that we have to get rid of it.").) Air Solutions rents its building space from Wales Management, a company owned by Mike Pitzo. (Peckinpaugh Dep. at p. 14.) Most tellingly, Air Solutions works through the license of Mike Pitzo. (*Id.* at p. 16.)

As stated earlier, Defendants have not opposed Plaintiffs' motion for summary judgment, and, as such, this Court has properly relied on the facts provided by Plaintiffs. *See Guarino, supra.* Moreover, this Court is very cognizant of the fact that Plaintiffs, but for the failure of Defendants to meaningfully participate in the discovery process (and in particular Defendants' failure to make available Mary Pitzo for deposition), would likely have been able to uncover even more evidence demonstrating that Air Solutions is the alter ego of MAP. This Court holds, however, that, the uncontroverted evidence presented demonstrates that Air Solutions have a substantially identical management, business, purpose, and ownership.

14

Moreover, although not required under Sixth Circuit precedent for a finding of alter ego liability, there is substantial support for Plaintiffs' theory that Defendants' intended to circumvent their labor obligations to Plaintiffs in the discontinuance of operations of MAP and the establishment of Air Solutions. Therefore, the Court holds that MAP and Air Solutions are alter egos and that Air Solutions is bound to the collective bargaining agreement as the alter ego of MAP, the signatory employer. *See Allcoast Transfer,* 780 F.2d at 582-83, *supra.*

### III.    CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiffs' motion for summary judgment. (Doc. No. 51.) Plaintiffs are awarded $211,680.75, plus interest at the rate prescribed by 28 U.S.C. § 1261 from the date of this judgment.

**IT IS SO ORDERED**.

Dated:    May 19, 2010

                                              **HONORABLE SARA LIOI**
                                              **UNITED STATES DISTRICT JUDGE**